UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

RICKEY ROCHE                          CIVIL ACTION NO. 6:18-cv-00858

VERSUS                                JUDGE JUNEAU

LOUIS ACKAL, ET AL.                   MAGISTRATE JUDGE HANNA

## REPORT AND RECOMMENDATION

Third-party defendant Pennsylvania Manufacturers' Association Insurance Company filed a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, seeking dismissal of the third-party complaint for defense and indemnity that was filed against it by defendants Byron Lassalle, Jason Comeaux, and Wade Bergeron. (Rec. Doc. 31). The motion was referred to the undersigned magistrate judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court. Lassalle, Comeaux, and Bergeron opposed the motion, and oral argument was held on September 12, 2019. Finding that it was in the best interest of all parties to the lawsuit, this Court converted the motion to dismiss to a motion for summary judgment so that material extraneous to the pleadings could be considered. (Rec. Doc. 49). Pennsylvania was ordered to file a memorandum setting forth any additional argument in support of the motion and was also ordered to file any additional summary-judgment style evidence that it believed should be considered. (Rec. Doc. 49). The other parties

were ordered to file responses. (Rec. Doc. 49). Pennsylvania complied with the order and filed a supplemental memorandum along with numerous exhibits. (Rec. Doc. 50). Lassalle, Comeaux, and Bergeron also complied with the order and filed a responsive brief. (Rec. Doc. 51). Pennsylvania then filed a reply brief. (Rec. Doc. 52). Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, it is now recommended that the motion for summary judgment should be granted and the third-party plaintiffs' claim against Pennsylvania should be dismissed with prejudice.

## **Background**

In his complaint, the plaintiff, Rickey Roche, alleged that he was involved in a physical altercation with Gerald Savoy, a deputy sheriff in Iberia Parish, Louisiana, in September 2010. The plaintiff further alleged that, due to that altercation, Deputy Savoy and Iberia Parish Sheriff Louis Ackal targeted him for retaliation. He alleged that, in December 2012, his vehicle was stopped by deputies, he was beaten, drugs were planted on him, he was arrested, and he was beaten again while in custody, all in retaliation for his altercation with Savoy. Although the plaintiff alleged that he pleaded guilty to a felony, he also alleged that he was falsely arrested, maliciously prosecuted, and falsely imprisoned on drug charges. The plaintiff sued Sheriff Ackal and Iberia Parish sheriff's deputies Gerald Savoy, Byron Lassalle, Jason Comeaux, and Wade Bergeron, asserting claims for the deprivation of constitutional rights,

2

malicious prosecution, and negligence.  While not set forth clearly in the complaint, it appears that the plaintiff might also be asserting intentional tort claims.  The plaintiff's claims against Sheriff Ackal were dismissed (Rec. Doc. 18), but his claims against the deputies remain to be resolved.

Defendants Lassalle, Comeaux, and Bergeron filed a third-party complaint against Pennsylvania Manufacturers' Association Insurance Company, seeking defense and indemnity for the claims asserted against them by the plaintiff.  (Rec. Doc. 29).  Pennsylvania responded to the third-party complaint with its motion to dismiss, which was subsequently converted to a motion for summary judgment. (Rec. Docs. 31, 49).  In support of the motion, Pennsylvania argued that it owes neither defense nor indemnity to Lassalle, Comeaux, and Bergeron under the insurance policies that it issued to the Iberia Parish Sheriff.

## Law and Analysis

### I.    The Standard for Analyzing a Motion for Summary Judgment

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law.  A fact is material if proof of its existence or nonexistence might affect the outcome of the lawsuit under the

applicable governing law.[1]  A genuine issue of material fact exists if a reasonable jury could render a verdict for the nonmoving party.[2]

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record that demonstrate the absence of genuine issues of material fact.[3]  If the moving party carries its initial burden, the burden shifts to the nonmoving party to demonstrate the existence of a genuine issue of a material fact.[4]  All facts and inferences are construed in the light most favorable to the nonmoving party.[5]

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that there is insufficient proof concerning an essential element of the nonmoving party's

---

[1]     *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

[2]     *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252); *Hamilton v. Segue Software, Inc.*, 232 F.3d at 477.

[3]     *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

[4]     *Washburn v. Harvey*, 504 F.3d at 508.

[5]     *Brumfield v. Hollins*, 551 F.3d at 326 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)).

claim.[6]   The motion should be granted if the nonmoving party cannot produce evidence to support an essential element of its claim.[7]

## II.    The Standard for Analyzing an Insurance Policy

The parties did not address whether Louisiana law applies to the interpretation of the insurance policies at issue in this lawsuit.   However, "the law of the state where the insurance contract was issued and executed generally governs the interpretation of that contract."[8]   It is undisputed that Pennsylvania's insurance policies were issued to the Iberia Parish Sheriff in Louisiana, and it is logical to presume that the policies were negotiated in Louisiana.   Accordingly, the policies will be interpreted under Louisiana law.

In Louisiana, an insurance policy is a contract between the parties and should be construed using the general rules of interpretation of contracts set forth in the Louisiana Civil Code.[9]   As a general rule, "the interpretation of an insurance policy

---

[6]    *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. at 325).

[7]    *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

[8]    *Pioneer Exploration, L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 512 (5th Cir.2014).

[9]    *Hebert v. Webre*, 2008-0060 (La. 05/21/08), 982 So.2d 770, 773; *Cadwallader v. Allstate Ins. Co.*, 02-1637 (La. 06/27/03), 848 So.2d 577, 580; *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So.2d 759, 763 (La. 1994).  See, also, *Hamilton v. State Farm Fire & Cas. Ins. Co.*, 477 Fed. App'x 162, 165 (5th Cir. 2012).

is a question of law."[10]  The goal of interpreting the terms and provisions of an insurance policy is to determine the common intent of the parties.[11]  The words and phrases used in an insurance policy are to be construed using their plain, ordinary, and generally prevailing meanings, unless the words have acquired a technical meaning.[12]  When the words of an insurance contract are clear and explicit and lead to no absurd consequences, the contract must be enforced as written.[13]  If, however, the insurance policy can be interpreted in two or more reasonable ways, then it is considered ambiguous and must be liberally construed in favor of coverage.[14]  The determination of whether a contract is clear or ambiguous is a question of law.[15]  An insurance policy should not be interpreted in a strained manner so as to enlarge or restrict its provisions beyond what is reasonably contemplated by its terms or so as

---

[10]    *Principal Health Care of Louisiana, Inc. v. Lewer Agency, Inc*., 38 F.3d 240, 242 (5th Cir. 1994) (citing *FDIC v. Barham*, 995 F.2d 600 (5th Cir. 1993).  See, also, *Gorman v. City of Opelousas*, 13-1734 (La. 07/01/14), 148 So.3d 888, 892; *Cutsinger v. Redfern*, 08-2607 (La. 05/22/09), 12 So.3d 945, 949.

[11]    *Louisiana Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 630 So.2d at 763.

[12]    Louisiana Civil Code Article 2047.  See, also, e.g., *Mayo v. State Farm Mutual Automobile Insurance Company*, 03-1801 (La. 02/25/04), 869 So.2d 96, 99.

[13]    Louisiana Civil Code Article 2046.  See, also, e.g., *Succession of Fannaly v. Lafayette Insurance Co*., 01-1355 (La.1/15/02), 805 So.2d 1134, 1137.

[14]    *Mayo v. State Farm Mutual Automobile Insurance Company*, 869 So.2d at 100.

[15]    *Mayo v. State Farm Mutual Automobile Insurance Company*, 869 So.2d at 100.

to achieve an absurd conclusion.[16]  Absent a conflict with statutory provisions or public policy, insurers are entitled to limit their liability and to impose reasonable conditions on the policy obligations they contractually assume.[17]  However, an insurer seeking to avoid coverage through summary judgment must prove that some exclusion applies to preclude coverage.[18]

An insurer's duty to defend suits brought against an insured is broader than its duty to indemnify the insured.[19]  Whether an insurer has a duty to defend is determined solely by comparing the allegations in the complaint with the terms of the policy at issue.[20]  If "there are any facts in the complaint which, if taken as true, support a claim for which coverage is not unambiguously excluded," the insurer must defend the insured.[21]  Accordingly, "[a]ssuming all the allegations of the petition are true, the insurer must defend, regardless of the outcome of the suit, if

---

[16]    *Sims v. Mulhearn Funeral Home, Inc.*, 2007-0054 (La. 05/22/87), 956 So.2d 583, 589.

[17]    *Green ex rel. Peterson v. Johnson*, 2014-0292 (La. 10/15/14), 149 So.3d 766, 773; *Cadwallader v. Allstate Ins. Co.*, 848 So.2d at 583.

[18]    *Coleman v. School Bd. of Richland Parish*, 418 F.3d 511, 517 (5th Cir. 2005) (citing *Doerr v. Mobil Oil Corp.*, 2000-0947 (La. 12/19/00), 774 So.2d 119, 124).

[19]    *Lamar Advertising Co. v. Continental Cas. Co.*, 396 F.3d 654, 660 (5th Cir. 2005) (citing *Selective Ins. Co. of Southeast v. J.B. Mouton & Sons, Inc.*, 954 F.2d 1075, 1077 (5th Cir. 1992) and *Jensen v. Snellings*, 841 F.2d 600, 612 (5th Cir. 1988)).

[20]    *Lamar Advertising Co. v. Continental Cas. Co.*, 396 F.3d at 660 (citing *Selective Ins. Co. of Southeast v. J.B. Mouton & Sons, Inc.*, 954 F.2d at 1077).

[21]    *Complaint of Stone Petroleum Corp.*, 961 F.2d 90, 91 (5th Cir. 1992).

there would be both (1) coverage under the policy and (2) liability to the plaintiff."[22]

In making this determination, a court must liberally interpret the complaint.[23]

## III.  Pennsylvania's Insurance Policies

Pennsylvania submitted copies of three insurance policies.[24]  Policy No. 821600 0789347 covers July 1, 2016 to July 1, 2017; Policy No. 821700 0789347 covers July 1, 2017 to July 1, 2018; and Policy No. 821800 0789347 covers July 1, 2018 to July 1, 2019.  Each policy is in the form of a "self-insured package policy." The named insured on the two earlier policies, as originally drafted, is "Iberia Parish Sheriff," while the named insured on the third policy, as originally drafted, is "Iberia Parish Sheriff, Iberia Parish Law Enforcement District."  The two later polices were endorsed to add more named insureds.[25]  All three policies contain forms addressing general liability coverage, law enforcement liability coverage, errors and omissions liability coverage, and sexual abuse liability coverage, but only the general liability and law enforcement liability coverage parts are relevant.  All three insurance

---

[22]    *Hardy v. Hartford Ins. Co.*, 236 F.3d 287, 290 (5th Cir. 2001).

[23]    *Complaint of Stone Petroleum Corp.*, 961 F.2d at 91.

[24]    Rec. Doc. 32-1 at 21-152.

[25]    Iberia Parish Sheriff is the only named insured listed in the first policy.  (Rec. Doc. 32-1 at 4).  City of New Iberia, Louisiana and Clara Bell Dore Hebert c/o Burton Cestia, Attorney at Law were added as named insureds on the second policy.  (Rec.Doc. 32-2 at 4, 44).  The named insureds on the third policy are Iberia Parish Sheriff; Iberia Parish Law Enforcement District; City of New Iberia, Louisiana; Clara Bell Dore Hebert c/o Burton Cestia, Attorney at Law; and BBrouss2 Investments, LLC.  (Rec. Doc. 32-3 at 4, 44).

policies are claims-made policies, and all three are true excess policies, subject to a self-insured retention.

## A.  <u>Is There a Duty to Defend</u>?

All three Pennsylvania policies contain an identical provision, stating that "[t]his policy does not require us to defend any suit or claim."[26]  This statement is clear, unequivocal, and unambiguous.  Similar policy provisions have been enforced on numerous occasions by Louisiana courts.  For example, marine protection and indemnity policies ordinarily do not create a duty to defend.[27]  Here, the language used in the policies clearly forecloses any duty to defend.  Therefore, this Court concludes that Pennsylvania has no duty to defend Lassalle, Comeaux, or Bergeron against the allegations set forth in the plaintiff's complaint.

## B.  <u>Is There a Duty to Indemnify</u>?

Pennsylvania argued, in support of its motion for summary judgment, that there are five reasons why it is not obligated to indemnify Lassalle, Comeaux, and Bergeron against the claims asserted in the plaintiff's complaint:  (1) the policies indemnify only the named insured; (2) coverage is excluded because the factual basis for the plaintiff's claims were known to the insureds before the first policy was issued; (3) Lassalle, Comeaux, and Bergeron are not insureds under the policy; (4)

---

[26]     Rec. Doc. 32-1 at 11; Rec. Doc. 32-2 at 11; Rec. Doc. 32-3 at 11.

[27]     *Gabarick v. Laurin Maritime (America), Inc.*, 650 F.3d 545, 552 (5th Cir. 2011).

the self-insured retention condition precedent to coverage has not been satisfied; and (5) an endorsement to the policies precluded coverage for the plaintiff's claims. These arguments will be addressed in turn.

**1.      Indemnity is Owed Only to the Named Insured**

Pennsylvania argued that its policies do not require it to indemnify the defendant deputies but only to indemnify the named insureds identified in the policies.  The insuring agreements in the general liability coverage part of each of the policies read as follows:  "We will indemnify you for all sums an insured must pay as damages or claim expense. . . ."[28]  The insuring agreement in the law enforcement liability coverage part of each of the policies reads as follows:  "We will indemnify you for all sums you become legally obligated to pay, including claim expense. . . resulting from law enforcement activities. . . ."[29]  Each of the policies states that "[t]hroughout this policy the words 'you' and 'your' refer to the named insured. . . ."[30]  It is undisputed that Lassalle, Comeaux, and Bergeron are not named insureds.  Therefore, they are not included within the policy's definition of "you" and Pennsylvania has no obligation to indemnify them.

---

[28]      Rec. Doc. 32-1 at 21; Rec. Doc. 32-2 at 21; Rec. Doc. 32-3 at 21.

[29]      Rec. Doc. 32-1 at 26; Rec. Doc. 32-2 at 26; Rec. Doc. 32-3 at 26.

[30]      Rec. Doc. 32-1 at 8; Rec. Doc. 32-2 at 8; Rec. Doc. 32-3 at 8.

As will be discussed further, Pennsylvania's polices are true excess policies that provide coverage only for amounts in excess of a self-insured retention. The general liability coverage part and the law enforcement liability coverage part of each policy contain the following provision, which explains how the self-insured retention limits Pennsylvania's duty to indemnify: "Our obligation to indemnify the insured applies only when the amount of loss and claim expense exceeds the Self-Insured Retention amount stated in the Common Policy Declarations per occurrence."[31]   Placed several paragraphs below the insuring agreements and pertaining solely to the applicability of the self-insured retention, the use of the phrase "[o]ur obligation to indemnify the insured" cannot be read as an expansion of the insuring agreement's clear and ambiguous statement that only the named insured is indemnified. Instead, this sentence must be construed as setting forth a particular limitation on the insurer's obligation to indemnify the named insureds. Its inclusion in the policies does not alter this Court's conclusion that Pennsylvania does not owe indemnity to Lassalle, Comeaux, and Bergeron because they are not named insureds.

An insurance policy containing language similar to that in Pennsylvania's policies was construed by Louisiana's Third Circuit Court of Appeals in *Miller v.*

---

[31]     Rec. Doc. 32-1 at 24, 28; Rec. Doc. 32-2 at 24, 28; Rec. Doc. 32-3 at 24, 28.

*Thibeaux*.[32]  In that case, a school bus driver, who was employed by the Vermilion Parish School Board, was in an accident that resulted in the death of a child.  The insurer had issued a policy to the Vermilion Parish School Board, which included all school board employees in the definition of the word "insured" and defined the word "you" to mean only the named insured.  The insuring agreement stated that "we agreed with you to provide indemnification for the Ultimate Net Loss in excess of the Retained Limit for which you become legally obligated to pay."  The court held that "the policy clearly and unambiguously" obligated the insurer to indemnify only the Vermilion Parish School Board.  The court said:  "Even though [the bus driver] is an 'insured' as defined in the policy, coverage is dependent on a finding that [the School Board] is legally obligated to pay for [the bus driver's] negligence. . . .  Moreover, [the insurer] is not obligated to indemnify, or otherwise provide separate liability coverage to, [the bus driver] for any amounts over that which [the School Board] is legally obligated to pay."

This Court finds that the same result should be reached in this case.  Although Lassalle, Comeaux, and Bergeron might conceivably meet the policies' definition of the word "insured" because they were employees of the Iberia Parish Sheriff at

---

[32]    *Miller v. Thibeaux*, 13-541, 13-1029 (La. App. 3 Cir. 01/27/16), 184 So.3d 856, writ denied, 2016-0353 (La. 04/15/16), 191 So.3d 1035.

relevant times, it is undisputed that they are not named insureds.  Consequently, Pennsylvania has no obligation to indemnify them.

## 2.     **The Knowledge Exclusion**

Pennsylvania argued that indemnity is precluded by a provision set forth in the general liability and law enforcement coverage parts of each of the relevant insurance policies, stating that coverage is provided only if "[p]rior to the inception of this policy, or first such policy issued and continuously renewed by us, no insured knew of the alleged bodily injury, personal injury or property damage"[33] underlying the claim.  When this policy language is compared to the allegations set forth in the complaint and the sworn testimony given by defendants Lassalle, Comeaux, and Bergeron at Sheriff Ackal's trial, this Court finds that defendants Lassalle, Comeaux, Bergeron, and Sheriff Ackal knew in 2012 about the events underlying this lawsuit, which was approximately three and a half years before Pennsylvania's earliest insurance policy was issued.

In 2016, Sheriff Ackal was indicted and charged with crimes arising out of the alleged use of unreasonable force by members of the Iberia Parish sheriff's office's narcotics unit.[34]  Lassalle, Bergeron, and Comeaux were separately charged

---

[33]     Rec. Doc. 32-1 at 21, 26; Rec. Doc. 32-2 at 21, 26; Rec. Doc. 32-3 at 21, 26.

[34]     Rec. Doc. 50-1 (original indictment); Rec. Doc. 50-2 (first superseding indictment); Rec. Doc. 50-3 (second superseding indictment).

with similar crimes.  Lassalle, Bergeron, and Comeaux all pleaded guilty,[35] were convicted,[36] and were sentenced to spend time in jail.[37]  Sheriff Ackal was tried and acquitted.

Lassalle, Bergeron, and Comeaux all testified at Sheriff Ackal's trial that they retaliated against the plaintiff by using excessive force against him during and after his arrest.[38]  Therefore, they all knew, before the first Pennsylvania insurance policy was issued, about the facts underlying this lawsuit.  Comeaux also testified that he informed Sheriff Ackal the next morning that Roche had been apprehended and beaten by narcotics agents.[39]  Therefore, based on the defendants' sworn testimony at Sheriff Ackal's trial, Sheriff Ackal had contemporaneous knowledge – well before Pennsylvania's insurance policies were issued – that the narcotics unit members had detained and beaten the plaintiff.  While there is an unresolved question regarding whether Lassalle, Comeaux, and Bergeron were insureds under the policies, it is

---

[35]    Rec. Doc. 50-10 (Bergeron's plea agreement); Rec. Doc. 50-11 (Comeaux's plea agreement); Rec. Doc. 50-12 (Lasalle's pleas agreement);

[36]    Rec. Doc. 50-18 (Bergeron judgment); Rec. Doc. 50-19 (Comeaux judgment); Rec. Doc. 50-20 (Lassalle judgment).

[37]    Rec. Doc. 50-14 (Bergeron sentencing); Rec. Doc. 50-15 (Comeaux sentencing); Rec. Doc. 50-16 (Lassalle sentencing).

[38]    Rec. Doc. 50-4 at 147-149 and Rec. Doc. 50-5 at 7-19, 68-71 (Lassalle's testimony); Rec. Doc. 50-5 at 170-178 (Bergeron's testimony); Rec. Doc. 50-4 at 9, 46-50, 118-121 (Comeaux's testimony).

[39]    Rec. Doc. 50-4 at 50, 119, 120.

undisputed that Sheriff Ackal was an insured – indeed, Iberia Parish Sheriff was the named insured – at all relevant times.

As employees of the Iberia Parish Sheriff, Lassalle, Comeaux, and Bergeron would appear to meet the definition of the word "insured" used in the policies. The common policy definitions set forth in each policy defines the word "insured" as "the named insured or any person or organization qualifying as an insured in the WHO IS AN INSURED provision for each coverage part."[40] The general liability coverage parts of each of the policies states that the Iberia Parish Sheriff's "past and present employees. . . while acting within the course and scope of employment" for the sheriff are insureds.[41] The law enforcement coverage parts of each of the polices state that the Iberia Parish Sheriff's "employees engaged in law enforcement activities" are insureds.[42] Assuming for purposes of this motion that Lassalle, Comeaux, and Bergeron were acting within the scope of their employment or were engaged in law enforcement activities at the times of the events described in the complaint, but without deciding that issue, coverage under these policy parts is excluded because Lassalle, Comeaux, and Bergeron knew about the plaintiff's injuries before the first Pennsylvania policy was issued. Further, the third-party

---

[40]    Rec. Doc. 32-1 at 14; Rec. Doc. 32-2 at 14; Rec. Doc. 32-3 at 14.

[41]    Rec. Doc. 32-1 at 22; Rec. Doc. 32-2 at 22; Rec. Doc. 32-3 at 22.

[42]    Rec. Doc. 32-1 at 27; Rec. Doc. 32-2 at 27; Rec. Doc. 32-3 at 27.

15

plaintiffs offered no evidence to rebut the evidence presented at Sheriff Ackal's trial that Sheriff Ackal was notified the next morning that the plaintiff had been apprehended, detained, and beaten by members of the narcotics unit. This occurred in December 2012, which was approximately three and a half years before the first insurance policy was issued. For that reason, this Court finds that any duty Pennsylvania might have had to indemnify Lassalle, Comeaux, and Bergeron was precluded by the knowledge exclusion set forth in Pennsylvania's insurance policies.

**3.** **Are Lassalle, Comeaux, and Bergeron Insureds?**

Having found that Pennsylvania's insurance policies provide indemnity only to the named insureds – and having found that Lassalle, Comeaux, and Bergeron are not listed as named insureds in the policies – it is not necessary to determine whether Lassalle, Comeaux, and Bergeron are insureds under the policies. Accordingly, discussion of that issue is pretermitted.

**4.** **Analysis of the Self-Insured Retention is Premature**

Pennsylvania argued that it owes no indemnity to Lassalle, Comeaux, or Bergeron because a condition precedent to coverage has not yet been satisfied. All three of Pennsylvania's policies state:

> This policy provides true excess coverage. All coverage in this policy is excess over any other insurance, unless that other insurance is specifically purchased by you to apply excess of this policy. The Self-

> Insured Retention may not be satisfied by any other insurance, unless specifically endorsed on this policy as such.[43]

All three policies contain a self-insured retention schedule indicating that the coverage afforded by each and every coverage part is excess over a stated amount.[44] The general liability coverage parts of the policies state that Pennsylvania's "obligation to indemnify the insured applies only when the amount of loss and claim expense exceeds the Self-Insured Retention amount. . . ."[45] The same language is repeated in the law enforcement liability coverage part of each policy.[46] The word "loss" is defined in the policies to mean "any monetary amount that an insured is obligated to pay because of a claim or an amount of money lost from destruction or ruin of property."[47] The term "claim expense" is defined in the policies to include "[r]easonable and necessary attorneys' fees, expert witness fees and other fees and costs" incurred by Pennsylvania or by its named insured in investigating and defending a covered claim.[48]

---

[43]    Rec. Doc. 32-1 at 11-12; Rec. Doc. 32-2 at 11-12; Rec. Doc. 32-3 at 11-12.

[44]    Rec. Doc. 32-1 at 6 ($250,000 self-insured retention for the law enforcement coverage part and $150,000 self-insured retention for the other coverage parts; Rec. Doc. 32-2 at 6 ($150,000 for each coverage part); Rec. Doc. 32-3 at 6 ($150,000 for each coverage part).

[45]    Rec. Doc. 32-1 at 24; Rec. Doc. 32-2 at 24; Rec. Doc. 32-3 at 24.

[46]    Rec. Doc. 32-1 at 28; Rec. Doc. 32-2 at 28; Rec. Doc. 32-3 at 28.

[47]    Rec. Doc. 32-1 at 15; Rec. Doc. 32-2 at 15; Rec. Doc. 32-3 at 15.

[48]    Rec. Doc. 32-1 at 13; Rec. Doc. 32-2 at 13; Rec. Doc. 32-3 at 13.

The language used in the policies is clear and unambiguous. Under the relevant policy language, Pennsylvania is a true excess insurer whose obligation to indemnify its insureds arises only after Pennsylvania or its named insured has satisfied the self-insured retention by paying money for either an insured loss or claim expenses in an amount greater than the amount of the self-insured retention. While Pennsylvania argued that neither it nor the Iberia Parish Sheriff has yet incurred losses or claim expenses exceeding the amount of the self-insured retention, the mere existence of the self-insured retention does not insulate Pennsylvania from all potential liability. Therefore, it would be premature to grant summary judgment in Pennsylvania's favor on this basis at this time since Pennsylvania's duty to indemnify will not be triggered until after the self-insured retention has been exhausted. Therefore, this argument lacks merit.

**5.    The Ackal Suit Exclusion**

Pennsylvania argued that a specifically-designed policy endorsement excludes coverage for the plaintiff's claims. The exclusionary language, which concerns the criminal case brought against Sheriff Ackal, is set forth in an endorsement to all three of Pennsylvania's insurance policies and is applicable to all coverage parts of the policies. It reads as follows, in pertinent part:

> We will not pay for any and all claims or incidents arising out of, or in any way related to, the allegations stated in the following matter, or to any persons named in such matter, or any other employees involved in,

18

or alleged to be involved in, any activities arising from the same or related incidents:
<u>U.S.A. vs. Louis Ackal, Gerald Savoy, et al.</u>, United States District Court, Western District of Louisiana, Case No. 6:16-cr-00048.
Further, specifically excluded from any coverage afforded by this policy are Iberia Sheriff Louis Ackal, Lieutenant Colonel Gerald Savoy, and Captain Mark Frederick.[49]

Pennsylvania argued that this Court should find that the plaintiff in this case is the same person identified only as "R.R." in the second superseding indictment in the criminal case cited in the endorsement and conclude that the actions complained of by the plaintiff are excluded from coverage by the quoted endorsement. Pennsylvania also argued that documents from the criminal cases in which defendants Lassalle, Bergeron, and Comeaux pleaded guilty to criminal charges demonstrate that they are persons involved in activities or incidents forming the basis for the criminal charges against Sheriff Ackal.

In the second superseding indictment, Louis Ackal and Gerald Savoy were charged with criminally conspiring with each other to abuse and obstruct in violation of 18 U.S.C. § 371. The second superseding indictment included a list of overt acts supporting the charge, including but not limited to the following:

p.     On September 16, 2010, the Narcotics Unit tracked down R.R., who had, one month earlier, punched SAVOY in a bar in front of SAVOY'S wife, and whom SAVOY and ACKAL had directed the Narcotics Unit to arrest and charge with a drug offense. When R.R. fled, Agents Bergeron and Lassalle chased him, subdued him, and

---

[49]     Rec. Doc. 32-1 at42; Rec. Doc. 32-2 at 43; Rec. Doc. 32-3 at 43.

placed him under arrest.  After arresting R.R., Bergeron and Lassalle assaulted him in retaliation for his prior assault on SAVOY.

q.    After the assault at the arrest site, the agents took R.R. back to the Narcotics Office, handcuffed him, and shackled him to a bench. Narcotics Agent Bergeron and another narcotics agent then struck R.R. while he was restrained on the bench.  When R.R.'s blood splattered on the wall, Agent Comeaux told R.R. to "lick the wall" to clean his blood off.  SAVOY, who was present when the officers struck R.R., never intervened to stop the unlawful assault on or abuse of R.R.

r.    Sometime after R.R.'s assault, a member of the Narcotics Unit reported to ACKAL that the Narcotics Unit had gotten R.R. back for what he had done to SAVOY.  ACKAL never expressed disapproval over the assault on R.R. or disciplined any of the officers involved.[50]

Lassalle, Bergeron, and Comeaux all testified regarding Rickey Roche at Sheriff Ackal's trial.[51]  They told a story generally consistent with the scenario laid out in the overt acts portion of the second superseding indictment, testifying that because Mr. Roche was involved in a physical altercation with Gerald Savoy, the Iberia Parish narcotics agents surveilled him, executed a traffic stop, Lassalle and Bergeron beat him up, then took him to the sheriff's office where he was beaten again, that Comeaux arrived and made him use his mouth to clean his blood off the wall, then the agents prepared and submitted false reports regarding that incident. Lassalle further testified that he struck Comeaux, leaving a mark on his body, for the purpose of justifying the cover story that Roche had struck Comeaux, necessitating

---

[50]    Rec. Doc. 50-3 at 16-17.

[51]    Rec. Doc. 50-4 at 147-149 and Rec. Doc. 50-5 at 7-19, 68-71 (Lassalle's testimony); Rec. Doc. 50-5 at 170-178 (Bergeron's testimony); Rec. Doc. 50-4 at 9, 46-50, 118-121 (Comeaux's testimony).

the use of force against him.  Lassalle testified that he understood that Sheriff Ackal had ordered the beating, and Comeaux testified that he informed Sheriff Ackal the next morning that Roche had been apprehended and beaten by narcotics agents.

The factual allegations set forth in the plaintiff's complaint, while sparse and lacking in explicit details, are sufficient to support a conclusion that the "R.R." referred to in the second supplemental indictment is the same person as the plaintiff in this lawsuit.  The complaint alleged that the plaintiff was involved in an altercation with Gerald Savoy at a bar, was thereafter targeted by Sheriff Ackal and the narcotics unit, was detained in a traffic stop, beaten by Lassalle and Bergeron at the scene of the stop, and then was beaten again by Lassalle, Comeaux, and Bergeron after being taken into custody.  Although there is no express reference in the complaint to the criminal prosecution of Sheriff Ackal or deputies Savoy, Lassalle, Bergeron, or Comeaux, and there is no reference to "R.R." or Rickey Roche in the stipulated factual bases for the guilty pleas entered by Lassalle, Comeaux, and Bergeron in their criminal prosecutions, the facts set forth in the complaint support a conclusion that the incidents described in the complaint are the same ones described in the second superseding indictment with regard to "R.R."

Because the factual scenario set forth in the plaintiff's complaint depict an incident arising out of and related to the allegations stated in Sheriff Ackal's criminal case and involves persons named in Sheriff Ackal's criminal case, this Court finds

that the incident described in the plaintiff's complaint is excluded from coverage by the Ackal suit endorsement to Pennsylvania's insurance policies.

## IV.    <u>Oral Argument</u>

In the order converting Pennsylvania's motion to dismiss to a motion for summary judgment, this Court set another oral argument for December 12, 2019 but ordered the parties to "state in their briefing whether they wish to have or to waive oral argument on the motion for summary judgment." (Rec. Doc. 49 at 2). The parties' supplemental briefs contain no statement regarding oral argument. This Court interprets this to mean that the parties did not strongly desire further oral argument. Accordingly, the oral argument previously scheduled for December 12, 2019 will be cancelled.

## <u>Conclusion</u>

Having found that the subject insurance policies do not require Pennsylvania to defend or indemnify Lassalle, Comeaux, or Bergeron with regard to the plaintiff's claims, this Court recommends that Pennsylvania Manufacturers' Association Insurance Company's motion for summary judgment (Rec. Doc. 31) should be granted. Accordingly, it is further recommended that the third-party claim asserted by Lassalle, Comeaux, and Bergeron against Pennsylvania should be dismissed with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.[52]

Signed at Lafayette, Louisiana, this 22nd day of November 2019.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE

---

[52]    See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1).